# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

CARL A. DIMPERIO, JR.,

                               Plaintiff,

     - v -                             Civ. No. 9:13-CV-1010
                                             (DNH/RFT)

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION,

                               Defendant.

**APPEARANCES:**                           **OF COUNSEL:**

CARL A. DIMPERIO, JR.
*Pro se* Plaintiff
7087 Buckley Road
Liverpool, NY 13088

HON. ERIC T. SCHNEIDERMAN         TIFFINAY M. RUTNIK, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for the Defendant
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

     On August 17, 2013,[1] *pro se* Plaintiff Carl A. Dimperio, Jr, while incarcerated

---

[1] The Second Circuit has held that due to the unique difficulties faced by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be properly filed at the time he or she hands the papers to the prison authorities for transmittal to the court. *Dory v. Ryan*, 999 F.2d 679, 681-82 (2d Cir. 1993), *modified on reh'g*, 25 F.3d 81 (2d Cir. 1994). It is presumed that a prisoner handed the pleading to the prison guard on the date he signed the complaint. *Shaw v. Superintendent Attica Corr. Fac.*, 2007 WL 951459, at *3 n.3 (N.D.N.Y. Mar. 28, 2007).

at Watertown Correctional Facility, commenced a civil action, pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), against New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 1, Compl. Specifically, Plaintiff alleges that DOCCS's failure to provide him with a reasonable accommodation led to his exclusion from the Shock Incarceration Program ("SIP") and the Temporary Release Programs.[2] On April 10, 2014, Plaintiff moved for summary judgment. Dkt. No. 18. On July 3, 2014, Defendant filed a Cross-Motion for Summary Judgment. Dkt. No. 34. Plaintiff filed a Reply on July 23, 2014. Dkt. No. 41.

## I. BACKGROUND

From November 28, 2011 to June 12, 2014, Plaintiff was in DOCCS's custody. Dkt. No. 34-11, Ex. B, Carl A. Dimperio, Jr. Dep., dated May 12, 2014, at p. 11; Dkt. No. 41-1, Pl.'s Reply Mem. of Law at p. 7. Plaintiff was transferred to Watertown on December 15, 2011. Dkt. 34-12, Ex. C at p. 011, Watertown Chron. History, dated May 14, 2014. Plaintiff suffers from severe cardiac disease, Dkt. No. 34-16, Ex. G at pp. 028-029, Mem., dated Feb. 4, 2014, and in February 2011, prior to his incarceration, Plaintiff had a heart attack that required triple bypass surgery.

---

[2] On October 24, 2013, the Honorable David N. Hurd, United States District Judge, performed an initial review of the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, and dismissed certain claims. Plaintiff's claim for failure to accommodate is the only remaining cause of action before the Court. Dkt. No. 5, Dec. & Order, dated Oct. 24, 2013.

Dimperio Dep. at p. 11.  He has been involved in a series of car accidents — three times his car was "totaled," and he was in a car accident shortly after his heart surgery. *Id.* at pp. 19-20.  Plaintiff also has a history of chronic pericarditis.  *Id.* at p. 12.  And during his incarceration, Plaintiff suffered from gastric reflux, arthritis in his spine and neck, bone spurs, bulging disks, and was on various medications.  *Id.* at pp. 28, 30, & 32.  On September 25, 2013, an implantable cardioverter defibrillator ("ICD") was placed in Plaintiff.  *Id.* at pp. 51-52.  He required an ICD because there was a risk that he "could drop dead at any minute from a fatal arrhythimia."  *Id.* at p. 52.

## A.  Shock Incarceration Program ("SIP")

DOCCS administers SIP.  Dkt. No. 34-18, Ex. I, DOCCS Directive No. 0086, Shock Incarceration Facilities [hereinafter "Directive 0086"], dated Dec. 20, 2013.  An essential aspect of the program is performing rigorous physical activity and hard labor on a tight schedule.  Dkt. No. 34-8, Thomas Leid Decl., dated July 2014, at ¶¶ 17-20; Directive 0086.  Each day, at 5:45 a.m., SIP begins with forty-five minutes of calisthenics and a half-hour run.  Leid Decl. at ¶ 19.  The physical training is based on the U.S. Army Field Manual 21-20, which emphasizes the importance of group exercise as a means to create cohesion within a platoon.  *Id.*  Due to the physical nature of the program, all inmates must pass the medical screening test in order to participate.  *Id.* at ¶¶ 15-16.  On December 23, 2011, Plaintiff was found "not

suitable" for the program due to his medical condition. Dkt. No. 34-19, Ex. J at p. 2, Shock Suitability Screening Form, dated Dec. 23, 2011. Plaintiff did not file a grievance nor request an accommodation for participation in SIP. Dkt. No. 34-4, Kathryn Gascon Decl., dated June 27, 2014, at ¶ 7; Dkt. No. 34-6, Deborah Kinderman Decl., dated July 2, 2014, at ¶¶ 9-11.

Some inmates are court-ordered to participate in SIP. *See* Leid Decl. at ¶ 24. When court-ordered inmates cannot participate in SIP for medical reasons, DOCCS places those individuals in an alternative shock incarceration program. *Id.* at ¶¶ 26-27; Directive 0086. Plaintiff is not eligible for the alternative shock incarceration program because he was not court-ordered to participate in SIP. Leid Decl. at ¶ 27.

### B. Temporary Work Release Programs

The Temporary Work Release Programs include Work Release and Presumptive Work Release CASAT.[3] Dkt. No. 34-7, Priscilla Ledbetter Decl., dated July 2, 2014, at ¶ 2. An essential requirement of the Work Release and Presumptive Work Release CASAT program is the ability to work. *Id.* at ¶ 4. Plaintiff applied three times to the Presumptive Work Release CASAT program. He first applied for CASAT on January 4, 2012. Dkt. No. 34-17, Ex. H at p. 004, Denial/Appeal Form, dated Jan. 17, 2012. His application was denied because he was on probation when

---

[3] CASAT stands for Comprehensive Alcohol and Substance Abuse Treatment. Dkt. No. 34-7, Priscilla Ledbetter Decl., dated July 2, 2014, at n.1.

he committed the offense that led to his incarceration at Watertown and his supervision was "characterized by violations." *Id.*; Ledbetter Decl. at ¶¶ 9-11. Plaintiff appealed the determination. In his appeal, he stated that "[i]n the month of February 2011, [he] suffered a major heart attack and underwent open heart surgery. [He] also suffered another cardiac event in September of 2011." Dkt. No. 34-17, Ex. H at p. 005, Appeal Lt., dated Jan. 31, 2012. He further stated that his heart medication "do[es] not mix well with street narcotics," which is why he would benefit from participating in the CASAT program. *Id.* at p. 006. His appeal was denied due to his "medical contraindications." Dkt. No. 34-16, Ex. G at p. 010, App. 201200014 Status Inquiry, dated Jan. 31, 2014. On or about September 17, 2012, the Facility Health Services Director reported that Plaintiff was not suitable for CASAT because he "has so many health problems that there are no guarantees of his continued ability to work or participate in [the Temporary Release Programs]." Dkt. No. 34-17, Ex. H at p. 017, Paul Hogan Email, dated Sept. 17, 2012.

On December 7, 2012, Plaintiff again applied to CASAT, and was denied at the facility level because he had committed a crime while on probation. Dkt. No. 34-16, Ex. G at p. 013, Denial/Appeal Form, dated Dec. 20, 2012. Plaintiff's second appeal was also denied based on "medical contraindications." Dkt. No. 34-16, Ex. G at p. 019, App. No. 201206398 Status Inquiry, dated Jan. 31, 2014.

On July 5, 2013, Plaintiff applied to CASAT for the third time. Dkt. No. 34-16, Ex. G at p. 002, TR App. History, dated Feb. 6, 2014. It was approved at the facility level, but denied by the Central Office because the Facility Health Services Director indicated that Plaintiff's "medical contraindications" made him ineligible for work release. *Id.*; Dkt. No. 34-16, Ex. G at p. 020, App. 201303259 Status Inquiry, dated Jan. 31, 2014. Plaintiff did not grieve the administrative determinations nor request an accommodation for entry into the CASAT program. Gascon Decl. at ¶ 7; Kinderman Decl. at ¶¶ 9-11. Plaintiff was released from DOCCS's custody on June 12, 2014. Pl.'s Reply Mem. of Law at p. 7.

## C. DOCCS's ADA Policy

It is DOCCS's policy to provide reasonable accommodations to disabled inmates. Dkt. No. 34-15, Ex. F, Directive No. 2614, Reasonable Accommodations for Inmates with Disabilities [hereinafter "Directive 2614"], date last revised June 28, 2013. Directive 2614, entitled "Reasonable Accommodations for Inmates with Disabilities," states that an accommodation request must be in writing and directed to the Deputy Superintendent for Program Services. *Id.* at p. 3. The Directive also instructs inmates to file a grievance if they have been discriminated against based on a disability and/or disagree with the decision issued on his or her request for a reasonable accommodation. *Id.* at p. 4. Directive 2614 was available to all inmates

in the law library throughout Plaintiff's incarceration at Watertown. Kinderman Decl. at ¶ 6. In addition, there are visible ADA postings throughout the facility, including dorms, medical facility, library, and recreation area. The postings advise inmates that they may seek an accommodation by contacting the Deputy Superintendent of Program Services. *Id.* at ¶ 8.

Plaintiff concedes that he did not file any grievances relating to his various application denials or the lack of accommodations provided by DOCCS for his participation in either SIP or the CASAT program. Instead, Plaintiff argues that, with respect to SIP, he was "procedurally estopped" from pursuing his administrative remedies because the Shock Suitability Screening Form states, "this decision is not appealable." Pl.'s Reply Mem. of Law at p. 3. Plaintiff also argues that there are additional special circumstances that justify his failure to exhaust his administrative remedies. *Id.* at pp. 3-5. Lastly, Plaintiff informs the Court that "should the Plaintiff find himself in the situation where this action where [sic] to be dismissed on such grounds as failure to exhaust administrative remedies, he could simply refile the claim without being subject to the PLRA's exhaustion requirements" since he is no longer an inmate.[4] *Id.* at p. 7.

---

[4] Because the Court finds that Plaintiff's Title II ADA claim lacks merit, the Court finds it unnecessary to discuss whether special circumstances justify his failure to exhaust available administrative remedies. *See infra* Part II.B.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when

the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). In addition, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord Soto v. Walker*, 44 F.3d 169, 173

(2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Furthermore, when considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d at 1461.

## B. ADA

The Anti–Discrimination provision of Title II of the ADA, states in pertinent part, that " no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs,

or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To bring a claim under Title II of the ADA, a plaintiff must establish that (1) he is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his disability; and (3) the entity providing the service is a public entity. *Farid v. Demars,* 2009 WL 455450, at *4 (N.D.N.Y. Feb. 23, 2009) (citation omitted). In a Title II ADA case, where direct evidence of discriminatory conduct is rare, the courts in this circuit analyze such claims under the *McDonnell-Douglas* burden-shifting framework. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Quad Enters. Co., LLC v. Town of Southhold*, 369 F. App'x 202, 205-06 (2d Cir. 2010) (analyzing an ADA claim based on disparate impact under a modified version of the *McDonnell-Douglass* framework); *Brown v. Cnty. of Nassau*, 736 F. Supp. 2d 602, 612 (E.D.N.Y. 2010) (finding it proper to use a modified burden shifting framework to analyze a Title II ADA claim "[a]lthough the Second Circuit has never explicitly addressed the use of such a framework in the context of an ADA claim under Title II, it has utilized this type of burden-shifting analysis in the context of a claim under Section 504 of the Rehabilitation Act.").

Accordingly, if Plaintiff establishes his *prima facie* case, the burden then shifts to DOCCS "to assert a legitimate, nondiscriminatory rationale for the challenged

[action]." *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). If DOCCS make such a showing, the burden shifts back to Plaintiff to demonstrate that the proffered reasons are a mere pretext. *Id*. Thus, the Court's first inquiry is whether Plaintiff has established a *prima facie* case.

### 1. *Qualifying Individual with a Disability*

It is undisputed that Plaintiff was excluded from participating in SIP and the CASAT program due to his disability, and that DOCCS is a public entity. However, DOCCS contends that Plaintiff has failed to meet a threshold issue, namely, that he is not a qualified individual with a disability.

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

To be sure, this definition requires a plaintiff to establish that he or she (1) has a qualifying disability under the ADA statute, *Widomski v. State Univ. of New York at Orange*, 748 F.3d 471, 474 (2d Cir. 2014); (2) would be able to participate in the program with or without reasonable modifications, *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 139, 141 (2d Cir. 1995); *see also Castellano v. City of New York*,

946 F. Supp. 249, 253-54 (S.D.N.Y 1996); and (3) meets the essential eligibility requirements, *C.D. v. New York City Dep't of Educ.*, 2009 WL 400382, at *7 (S.D.N.Y. Feb. 11, 2009)*; see Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 157 (2d Cir. 2013) *cert. dismissed*, 133 S. Ct. 2823 (2013).

Here, Defendant argues that Plaintiff has failed to prove that he is a qualifying individual with a disability because he cannot demonstrate that he would be able to participate in SIP or the CASAT program even with a reasonable modification. Def.'s Cross-Mot. for Summ. J. at p. 6. Presently, Plaintiff argues that he could have been placed in the alterative shock incarceration program and that such placement would have been a reasonable modification. This argument fails for several reasons. One, Plaintiff is not eligible for the alternative shock incarceration program because he was not court-ordered to participate in SIP. Two, whether or not Plaintiff could have been placed in the alternate shock incarceration program — a third and distinct program — is unrelated to whether a reasonable modification existed to allow Plaintiff to fully participate in the traditional SIP and/or CASAT program. As a result, Plaintiff has failed to state a modification that would have allowed him to participate, specifically, in the traditional SIP and/or CASAT program — the programs he applied to. More significantly, Plaintiff did not request an accommodation despite the visible ADA postings in the Facility. Generally, a request for an accommodation is a prerequisite

*-13-*

to liability for failure to accommodate as it prevents a party from keeping their disability a secret and suing later for failure to accommodate. *Brady v. Wal-Mart Stores, Inc*., 531 F.3d 127, 135 (2d Cir. 2008) (finding this view consistent with the ADA statute). In fact, "[a]n underlying assumption of any reasonable accommodation claim is that the plaintiff[] has requested an accomdation[.]" *Flemmings v. Howard Univ.,* 198 F.3d 857, 861 (D.C. Cir. 1999) (quoted in *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185 (2d Cir. 2006)). As a result, this action can be dismissed as a matter of law because Plaintiff failed to seek an accommodation. *See Frank v. Lawrence Union Free Sch. Dist.*, 688 F. Supp. 2d 160, 173 (E.D.N.Y. 2010) (ruling that the employee failed to assert a reasonable accommodation claim because he "never requested any accommodations"); *Vazquez v. Southside United Hous. Dev. Fund Corp.*, 2009 WL 2596490, at *11 (E.D.N.Y. Aug. 21, 2009) (citing *Rivera v. Apple Indus. Corp.*, 148 F. Supp. 2d 202, 215 (E.D.N.Y. 2001) & *Mazza v. Bratton*, 108 F. Supp. 2d 167, 176 (E.D.N.Y. 2000), for the proposition that a reasonable accommodation claim may be dismissed as a matter of law when there is no evidence that a plaintiff requested an accommodation.)

Lastly, Defendant has raised sovereign immunity as a defense. However, we need not consider whether sovereign immunity was abrogated because Plaintiff fails to state a Title II claim. *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d at

152 (citation omitted).  Thus, the Court recommends **denying** Plaintiff's Motion for Summary Judgment and **granting** Defendant's Cross-Motion for Summary Judgment in its entirety.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Dkt. No. 18) be **DENIED** and that Defendant's Cross-Motion for Summary Judgment (Dkt. No. 34) be **GRANTED** in its entirety and the case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  February 18, 2015
       Albany, New York

Randolph F. Treece
U.S. Magistrate Judge